UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
THE FELLOWSHIP FOR ADVANCED
COMPREHENSIVE TALMUDICS, INC.,

                                      Plaintiff,         Case No. 23-CV-06008-RPK-TAM

      -vs-

EAST 16TH ST. REALTY, LLC,
SIG CRE 2023 VENTURE LLC,
NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE, 10 O.K., L.P., and "JOHN DOE # 1"
through "JOHN DOE # 10,"

The last ten names being fictitious and unknown to
Plaintiff, the person or parties intended being the persons
or parties, if any, having or claiming an interest in or lien
upon the mortgaged property described in the complaint,

                                     Defendants.
----------------------------------------------------------------------X


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SIG CRE 2023 VENTURE LLC'S MOTION TO DISMISS

Jonathan E. Neuman, Esq.
176-25 Union Turnpike, Suite 230
Fresh Meadows, NY 11366
(347) 450-6710
(718) 228-3689 *facsimile*
jnesq@jenesqlaw.com

*Attorney for Plaintiff*

April 1, 2024

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................1

I.  EXHAUSTION DOESN'T APPLY BECAUSE THERE WAS A PENDING CASE AT THE TIME OF THE FDIC'S APPOINTMENT ....................................................1

II. THE EXHAUSTION PERIOD NEVER BEGAN BECAUSE OF DEFENDANT'S DEFICIENT NOTICE ..................................................................................................9

III. FIRREA DOES NOT APPLY TO QUESTIONS OF LIEN PRIORITY ...................11

CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Bloom v. FDIC*,
    738 F.3d 58 (2d Cir. 2013) ................................................................................ 8

*Cent. Laborers' Pension Fund v. All. Commer. Concrete, Inc.*,
    2015 U.S. Dist. LEXIS 42460 (C.D. Ill. Mar. 31, 2015) ..................................... 5

*Coast-To-Coast Fin. Corp. v. United States*,
    51 Fed. Cl. 358 (2002) ....................................................................................... 5

*Damiano v. FDIC*,
    104 F.3d 328 (11th Cir.1997) ............................................................................ 4

*FDIC v. Grillo*,
    788 F. Supp. 641 (D.N.H.1992) ......................................................................... 7

*FDIC v. LaCentra Trucking, Inc.*,
    157 F.3d 1292 (11th Cir. 1998) ..................................................................... 4, 5

*FDIC v. McFarland*,
    243 F.3d 876 (5th Cir. 2001) ........................................................................... 12

*FDIC v. Updike Bros., Inc.*,
    814 F. Supp. 1035 (D.Wyo.1993) .................................................................... 10

*FDIC v. diStefano*,
    839 F. Supp. 110 (D.R.I. 1993) ....................................................................... 12

*Greater Slidell Auto v. American Bank of Baton Rouge*,
    32 F.3d 939 (5th Cir.1994) .............................................................................. 10

*Marquis v. Fed. Deposit Ins. Corp.*,
    965 F.2d 1148 (1st Cir. 1992) ................................................................... 2, 3, 4

*N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*,
    28 F.4th 357 (2d Cir. 2022) ............................................................................... 8

*Pilot Dev. v. Capitalsouth Bank*,
    2011 U.S. Dist. LEXIS 173998 (N.D. Ala. Mar. 15, 2011) ................................ 5

*Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*,
    947 F.2d 49 (3d Cir. 1991)................................................................................... 5

*Rise Dev. Partners, LLC v. Signature Bank*
    2023 U.S. Dist. LEXIS 116214 (2023).................................................................. 8

*Superior Bank, FSB v. Boyd (In re Lewis)*,
    398 F.3d 735 (6th Cir. 2005) ................................................................................ 4

*W Fin. Reit, Ltd. v. 150-152 E. 79 LLC*,
    2023 U.S. Dist. LEXIS 115285 (S.D.N.Y. July 5, 2023) ...................................... 8

*Whatley v. Resolution Tr. Corp.*,
    32 F.3d 905 (5th Cir. 1994) ......................................................................... 5, 6, 7

*Wilson v. FDIC*,
    827 F. Supp. 120 (E.D.N.Y. 1993) ....................................................................... 5

**FEDERAL STATUTES**

Title 12 U.S.C.
    § 1821(d)(B)........................................................................................................ 10

Plaintiff respectfully submits this Memorandum of Law in opposition to Defendant SIG CRE 2023 VENTURE LLC's motion to dismiss:

## PRELIMINARY STATEMENT

Defendant's arguments must be categorically denied, because in this case there was a pending litigation and the FDIC failed to request a stay for purposes of administrative exhaustion. Moreover, even assuming that the administrative process was applicable, Defendant failed to provide constitutionally-mandated notice to Plaintiff, and thus any requirement to exhaust administrative remedies never began. Thus, Defendant waived any right to a stay or the administrative process, and accordingly, Defendant's motion to dismiss must be summarily denied.

## ARGUMENT

**I.   EXHAUSTION DOESN'T APPLY BECAUSE THERE WAS A PENDING CASE AT THE TIME OF THE FDIC'S APPOINTMENT**

Defendant's entire motion is premised on the theory that Plaintiff's case is barred because Plaintiff would have had to have exhausted the administrative process and now the bar date has passed. Defendant nakedly asserts that FIRREA's mandatory claims process applies to our case just as it would any other. However, this naked argument is completely incorrect, because unlike the cases relied upon by Defendant, at the time of the FDIC's appointment, there was already a pending case.

Although Defendant cites to a series of cases, all those cases stand for is the proposition that generally, a plaintiff must exhaust FIRREA's administrative claims process before seeking judicial review. However, those cases have nothing to do with the situation in our case, in which there was already judicial review (one that had been transpiring for four years at that point) pending at the time of the FDIC's appointment.

The only case cited by Defendant that deals with this situation, is *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir. 1992), which Defendant quotes as saying that "[FIRREA] makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver." The problem for Defendant, however, is that Defendant quotes *Marquis*'s introduction, **not its conclusion**. What the First Circuit actually concluded in *Marquis* was just the opposite of Defendant's position, to wit:

> We hold that FIRREA **did not** strip the federal courts of subject matter jurisdiction over civil actions **pending** against a failed financial institution at the time the FDIC takes over as the institution's receiver. The court may, however, in its discretion -- and ordinarily should -- stay proceedings for more than the 90 days specified in 12 U.S.C. § 1812(d)(12) so as to permit exhaustion of the mandatory administrative claims review process. Hence, we **affirm** the district court's **refusal to dismiss the underlying actions for want of subject matter jurisdiction** and remand the cases to the court below for further proceedings not inconsistent herewith.

*Marquis v. Fed. Deposit Ins. Corp.*, 965 F.2d 1148, 1155 (1st Cir. 1992) (emphasis added).

As the Court explained, in rejection of the FDIC's argument:

> The single sentence which is most difficult to harmonize with the FDIC's reading of the statute is the provision which states that, subject to the 90-day stay described elsewhere in the statute, see 12 U.S.C. § 1821(d)(12)(A), "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of a receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). What could be more prejudicial to a claimant's right "to continue" a pending action than the outright dismissal of the action?
>
> The FDIC's attempted answer strikes us as lame. It argues that 12 U.S.C. § 1821(d)(5)(F)(ii) and its counterpart, 12 U.S.C. § 1821(d)(8)(E)(ii) (providing a similar disclaimer of prejudice with reference to parties proceeding under FIRREA's expedited claims procedures), do not serve to insulate prereceivership suits from dismissal, but merely protect prereceivership litigants from actual prejudice, such as time bars, pending completion of the ACRP. That asseveration, however, fails to explain why Congress used the verb "continue" rather than a verb such as "recommence" or "refile." Indeed, the FDIC's recension of the law simply reads the word "continue" out of the statute.
>
> It is also difficult to imagine why Congress would have felt a need to provide for stays of pending suits, 12 U.S.C. § 1821(d)(12), if such suits were automatically to

be dismissed. Once again, the FDIC has an answer -- but not a good one. It contends that withdrawing cases from the courts by automatic dismissal does not make a nullity of the 90-day stay provision, since 12 U.S.C. § 1821(d)(12) applies not only to actions brought <u>against</u> insolvent financial institutions but also to actions brought <u>by</u> those institutions (and thus, the subsection serves to furnish the FDIC with an opportunity to freeze litigation for a brief period in order to familiarize itself with claims which it bears the burden of pursuing, if it so chooses). But, the stay provision applies to actions in which the institution is "a party," <u>id.,</u> not merely to actions in which the institution is "a plaintiff." And, the FDIC has pointed to nothing in FIRREA's compendious legislative history that suggests Congress was thinking along the lines of a plaintiff/defendant dichotomy in fashioning FIRREA's stay provisions.

*Marquis,* 965 F.2d at 1152-53. As the Court explained next:

Subsection (d)(5)(F)(ii) is part of the rubric that establishes the ACRP. It states that, "subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). The provision to which this subsection refers is entitled "Suspension of Legal Actions." It provides in relevant part:

After the appointment of a . . . receiver for an insured depository institution, the . . . receiver may request a stay for a period not to exceed --
. . .
(ii) 90 days . . . in any judicial action or proceeding to which such institution is or becomes a party.

12 U.S.C. § 1821(d)(12)(A). The next subparagraph commands courts to grant all such stays, when and if requested. 12 U.S.C. § 1821(d)(12)(B). We read these sections, in combination, as constructing a scheme under which courts will retain jurisdiction over pending lawsuits -- suspending, rather than dismissing, the suits -- subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims.

In our opinion, reading FIRREA in this fashion is as faithful as possible to the statute's text, harmonizes its various provisions, and is consistent with the policies which Congress sought to advance. Faced with a national banking crisis, Congress wanted to facilitate takeovers of insolvent financial institutions and smooth the modalities by which rehabilitation might be accomplished. To this end, FIRREA was designed to create an efficient administrative protocol for processing claims against failed banks. This objective would be disserved by forcing the courts to dismiss all pending litigation, only to have the cases refiled when and if administrative settlement proved impracticable. It is difficult to conceive of anything less efficient than dismissing a suit that has been, say, two years in process, only to have an identical suit started afresh some six months later. By staying all proceedings in a pending action until the administrative claims process

has run its course, efficacy will be promoted. At that point, suits based upon resolved claims can be dismissed outright, whereas suits based upon claims still unresolved can simply be resumed, thereby dispelling the need to retrace steps already completed.

By the same token, other policies which Congress obviously sought to advance in enacting FIRREA -- fairness to claimants, minimization of expense, and thoughtful husbanding of scarce judicial resources -- are also furthered by reading the statute as we do. Claimants will be spared the unnecessary costs of refiling cases and bringing them up to speed. Courts will similarly be spared the trouble of starting from ground zero in each and every case in which an administrative settlement does not materialize.

**In short, four powerful indicators of FIRREA's meaning -- the structure of the Act, its language, the underlying legislative intent, and common sense -- unanimously counsel in favor of a construction of FIRREA that permits federal courts to retain subject matter jurisdiction in circumstances where a bank's failure (and the FDIC's appointment as receiver) postdates the institution of a suit against the bank.**

*Marquis v. Fed. Deposit Ins. Corp.*, 965 F.2d 1148, 1153-54 (1st Cir. 1992) (emphasis added).

The modern trend of all of the Circuit Courts of Appeal that have addressed this issue since *Marquis*, as well as the United States Court of Federal Claims, have gone even further. These courts have said that where there is a case pending at the time of the FDIC's appointment, the FDIC is already in possession of the plaintiff's claim (since the statute requires no specific procedure for presenting claims to the FDIC), and thus there is no requirement for the plaintiff to file a claim with the FDIC; rather, "the RTC must satisfy two conditions to require the plaintiff in a pre-receivership lawsuit to exhaust its administrative remedies before continuing the action: (1) The RTC **must 'insist on the use of its administrative processes,' by staying the action and informing the plaintiff that it is doing so pending exhaustion of the administrative remedies,** and (2) it must do so in a timely fashion, that is, within the ninety-day period specified in § 1821(d)(12)." *FDIC v. LaCentra Trucking, Inc.,* 157 F.3d 1292, 1304-05 (11th Cir. 1998) (*citing Damiano v. FDIC*, 104 F.3d 328, 335 (11th Cir.1997)); *see also Superior Bank, FSB v.*

*Boyd (In re Lewis)*, 398 F.3d 735, 743-44 (6th Cir. 2005); *Coast-To-Coast Fin. Corp. v. United States*, 51 Fed. Cl. 358, 362 (2002); *Whatley v. Resolution Tr. Corp.*, 32 F.3d 905, 908-10 (5th Cir. 1994); *Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 63 n.14 (3d Cir. 1991) ("Neither the exhaustion of remedies requirement nor the FIRREA administrative claims procedure applies to actions the thrift itself commenced before it went under."); *see also Wilson v. FDIC*, 827 F. Supp. 120, 125 (E.D.N.Y. 1993) ("This court determines that it retains jurisdiction over judicial actions filed against a financial institution prior to the appointment of the FDIC as receiver, even when the party fails to file a later redundant claim with the FDIC."); Cent. Laborers' Pension Fund v. All. Commer. Concrete, Inc., No. 08-3065, 2015 U.S. Dist. LEXIS 42460, at *13-14 (C.D. Ill. Mar. 31, 2015) ("The Plaintiffs' action was filed before the FDIC was appointed as receiver. Pursuant to § 1821(d)(5)(F)(ii), the Plaintiffs may continue the action subject to the discretionary stay provision of paragraph 12. Because the FDIC did not request a stay, the Court concludes that Plaintiffs may maintain and prosecute their claim in this Court."); *Pilot Dev. v. Capitalsouth Bank*, No. 2:9-cv-02332-AKK, 2011 U.S. Dist. LEXIS 173998 (N.D. Ala. Mar. 15, 2011).

In our case, the failure of the FDIC to follow these two mandatory steps thereby results in a waiver of any requirement for the administrative process.

As the Eleventh Circuit explained in *LaCentra*,

> The facts of this case require a finding that lienors' claims were properly filed/presented. The most compelling facts are, of course, that the claims were in the hands of Flagler from the beginning of the controversy, and Flagler's suit was brought for the purpose of assigning a priority to the claims that in practical effect would make them valueless (or, at least, substantially less valuable). RTC became owner and manager of the suit, litigated it, and continues to do so. The policies underlying a requirement of presentation have been vindicated. It defies common sense to urge that Flagler and RTC have never been "presented" with the claims that have been in their hands since this controversy began.

*FDIC v. LaCentra Trucking, Inc.*, 157 F.3d 1292, 1304-05 (11th Cir. 1998). And as the

Fifth Circuit explained in *Whatley*,

> Congress created a separate scheme for the handling of pre-receivership actions, **giving the receiver the privilege, but not the duty, to request a stay of judicial proceedings** so that it might first consider the pending claim administratively. Neither a request for a stay nor the failure to request a stay deprives the district court of jurisdiction. Rather, if the receiver requests a stay, the court will defer action temporarily. If the receiver does not timely seek a stay, the judicial action will routinely proceed. This does not mean that the judicial process runs concurrently with the administrative remedy. **Congress has given the receiver the option to either request a stay, and proceed administratively based on the claimant's complaint or any substitute or supplemental filing it may request,** *or* **forego the privilege of requesting a stay and thus proceed judicially.** Should the receiver choose to proceed administratively, it must request the stay within 90 days of its appointment; **thereafter no stay may be sought and the judicial action is to proceed**.

*Whatley*, 32 F.3d at 908 (emphasis added). The Fifth Circuit explained that the plain language of the statute supports this conclusion:

> As in any case of statutory interpretation, we look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress. The language of subsection 1821(d) is clear: "The Corporation *may* as receiver, determine claims in accordance with the requirements of this subsection." "After … appointment … [as receiver for an insured depository institution, … [it] *may* request a stay for a period not to exceed … 90 days, … in any judicial action or proceeding to which such institution is or becomes a party.]" The term "may" is permissive; it neither indicates nor requires an exclusive means of action--it is discretionary. Paragraph (3)(A) allows, but does not require, the receiver to determine claims in accordance with FIRREA; paragraph (12)(A)(ii) grants the receiver the privilege, should it choose to proceed administratively, to request a stay of judicial proceedings. Neither provision is mandatory. The use of the term "shall" in other paragraphs of subsection 1821(d) supports this analysis.
>
> The language of subsection 1821(d), and its legislative history, lends support to our conclusion. Absent a request for a stay pursuant to paragraph (12)(A)(ii), no provision of the subsection exists by which the judicial proceeding may be stayed. As congressional goals of efficiency and expediency would be prejudiced if administrative and judicial processes were allowed to proceed simultaneously, Congress obviously intended to grant the receiver the option to use initially either the administrative or judicial mechanism. If Congress had intended the administrative procedure to be exclusive for pre-receivership actions, it would not have provided for the permissive stay. It would have been a simple matter to provide for an automatic, mandatory stay of all pending judicial actions. This Congress did not do; this we will not do under the guise of statutory interpretation.

*Whatley*, 32 F.3d at 908 (emphasis in original). And as the Fifth Circuit further appropriately explained,

> There is an added **odious dimension** when the receiver, with full knowledge of the pending lawsuit, **foregoes a request for a stay and waits until the time for the administrative claims process has expired to appear in court requesting dismissal because of the plaintiffs' supposed failure to exhaust administrative remedies**. In the eyes of the claimant -- especially one who receives no actual notice of the administrative process -- his lawsuit is awaiting disposition: the receiver, having intervened and been substituted as party defendant, ostensibly joins him in awaiting a hearing on the merits. In reality, however, the receiver lies in ambush, awaiting expiration of the administrative deadline so that it may dispose of the claim without consideration of its merits. **We neither find nor assign any such intent to Congress in its enactment of FIRREA**….the purposes of FIRREA and basic notions of fair play **militate against** the procedure followed by the receiver -- awaiting expiration of the time allowed for initiating claims and then moving to dismiss the pending judicial actions. FIRREA seeks the efficient and expedient handling of claims. Efficiency and expediency, however, **are not justifications for vitiating the primary purpose of FIRREA**. Congress intended to establish a scheme for fairly adjudicating claims against failed financial institutions. It did not structure a system **for the sandbagging of valid claims**. The statute is **not to be used** as an easy means of avoiding consideration of claims on their merits. As demonstrated by the special provisions governing pre-receivership suits, Congress had the **rights of claimants** in mind when it enacted FIRREA. RTC may not distort the provisions designed to facilitate the processing of claims into **a tool for subverting the right of claimants to present their claims on the merits**.

*Whatley,* 32 F.3d at 908-10 (emphasis added).

As stated, with the exception of *Marquis* (which Defendant has cited for the wrong conclusion) none of the cases cited by Defendant involved a case with a pre-existing suit at the time the FDIC was appointed receiver. The history of FIRREA makes clear that in a situation such as ours, where there was already a pending claim at the time of the FDIC's appointment, a claimant may pursue court action simultaneously with administrative claims resolution, or pursue only the administrative option, or only the court process. *See, e.g., FDIC v. Grillo*, 788 F. Supp. 641, 647 (D.N.H.1992). The decision finds the Congressional history to provide selected alternative remedies to the claimant and administrative adjudication to be neither exclusive nor mandatory. *Id.* As explained by the various Circuit courts cited above, the only way for the

FDIC to have gotten around this would have been for the FDIC to request a 90-day stay, which the FDIC failed to do, and therefore it waived any such right to do so now.

The Second Circuit Court of Appeals has not yet addressed this issue of whether a plaintiff needs to exhaust the administrative process if its lawsuit is pending before the appointment of the FDIC. In *Bloom v. FDIC*, 738 F.3d 58 (2d Cir. 2013), the Court recognized the circuit split regarding this issue,[1] but specifically declined to address it.[2] Accordingly, the trend of district courts within the Second Circuit is to stay cases upon request by the FDIC to allow for the exhaustion of the administrative process. *See, e.g., W Fin. Reit, Ltd. v. 150-152 E. 79 LLC*, No. 23-cv-3942 (JGK), 2023 U.S. Dist. LEXIS 115285, at *5 (S.D.N.Y. July 5, 2023); *Rise Dev. Partners, LLC v. Signature Bank*, No. 23-cv-4242 (JGK), 2023 U.S. Dist. LEXIS 116214, at *5-6 (S.D.N.Y. July 6, 2023). However, here the FDIC did not request any stay, and moreover failed to request any stay within 90 days after its appointment, and therefore it waived any right to request a stay. *See Rise Dev. Partners, LLC v. Signature Bank*, No. 23-cv-4242 (JGK), 2023 U.S. Dist. LEXIS 116214, at *7 n.4 (S.D.N.Y. July 6, 2023).

(Parenthetically, because the FDIC transferred away its rights to a new entity that is now controlled, in part, by a new bank, Plaintiff's claims would no longer be subject to the administrative process regardless. *See, e.g., Rise Dev. Partners*, 2023 U.S. Dist. LEXIS 116214, at *6 ("It is true that claims asserted against a failed bank placed under receivership are no longer subject to FIRREA's administrative review process when that bank's liabilities are assumed by a

---

[1] An earlier line of Circuits held that even when there is a pending litigation, a plaintiff needs to exhaust the administrative process otherwise the court is divested of jurisdiction. As stated, however, the most recent Circuit decisions, as well as the United States Court of Federal Claims, have all held the opposite, that there is no need for a plaintiff to file a claim with the FDIC if there is already a case pending at the time of the FDIC's appointment.

[2] However, in a recent case, the Second Circuit cited *Praxis*, *Whatley*, and *Damiano*, the predecessor case to *LaCentra* and the case upon which *LaCentra* was based. *See N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*, 28 F.4th 357, 374-75 (2d Cir. 2022) (citing *Praxis*, *Whatley*, and *Damiano*).

purchasing bank. *See, e.g., JPMC Specialty Mortg.*, 248 F. Supp. 3d at 424 ("[B]ecause FIRREA does not contemplate administrative review of claims that have passed to the purchasing bank, that statute does not apply to any claims assumed by JPMC through virtue of the P & A Agreement."); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 502 (S.D.N.Y. 2012) (finding FIRREA inapplicable because the liabilities at issue passed from the receiver to the defendant pursuant to a PAA)."). However, there is no need to address this issue, because as shown, Defendant waived any right to the administrative process anyway.)

In our case, then, where the FDIC was already in possession of Plaintiff's claim from the very outset when it was appointed, and yet never sought to stay the case or inform Plaintiff that it was doing so for purposes of exhausting administrative remedies, the FDIC waived any such argument of failure to exhaust administrative remedies, and FIRREA has no applicability, and therefore Defendant's motion must be summarily denied.

## II. THE EXHAUSTION PERIOD NEVER BEGAN BECAUSE OF DEFENDANT'S DEFICIENT NOTICE

Even were FIRREA to apply in this case, Defendant's motion would still have to be denied, because Defendant failed to provide Plaintiff with proper notice. Under FIRREA, the FDIC is required to provide notice via two methods upon its appointment:

(B) Notice requirements

The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall --

(i) promptly publish a notice to the depository institutions's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and

(ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

**(C) Mailing required**

**The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books --**

(i) at the creditor's last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

12 U.S.C. § 1821(d)(B)-(C) (emphasis added).

The failure of the FDIC to provide proper notice as required under the statute violates due process and therefore mandates denial of a motion to dismiss for lack of jurisdiction. *See, e.g., Greater Slidell Auto v. American Bank of Baton Rouge*, 32 F.3d 939, 942 (5th Cir.1994) ("We are also persuaded by Plaintiffs' argument that failure to provide them notice by mail violates their right to due process. Mailing of notice to claimants known to the receiver is constitutionally required; for such claimants, publication of notice (which is sufficient for unknown claimants) is constitutionally infirm. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-20, 70 S. Ct. 652, 658-60, 94 L. Ed. 865 (1950); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798-800, 103 S. Ct. 2706, 2711-12, 77 L. Ed. 2d 180 (1983); *see also Whatley*, slip op. at (Duhe, J., concurring). The statutory requirement of mailed notice to claimants who become known applies as a constitutional minimum to a claimant known by reason of a law suit pending when the receiver is appointed. The district court's jurisdiction continues over the merits of the claim. The judgment of dismissal is VACATED and the matter is REMANDED for further proceedings.")

At best for Defendant, if the receiver fails to give proper notice, the FIRREA claims process is not initiated, and the time period for filing claims only begins to run after the receiver has properly complied with the notice requirements. *See, e.g.*, *FDIC v. Updike Bros., Inc.*, 814

F. Supp. 1035, 1041 (D.Wyo.1993). Defendant still has not provided proper notice, however.

Here, as shown by Defendant's own exhibit (Exhibit C), Defendant failed to comply with its mandatory statutory requirement. Defendant did not mail any notice to Plaintiff at Plaintiff's address. Instead, Defendant mailed the notice to Plaintiff's attorney. While that might or might not satisfy the statute's requirement, that is not an issue that this Court has to address, because even if mailing to the creditor's attorney is sufficient, here Defendant failed to do so. Rather than mailing the notice to Plaintiff's attorney, Defendant chose to mail the notice to Suslovich & Klein, LLP, a law firm that had not represented the Plaintiff for over 3 years, going back to February 2020. *See* Exhibit 1, Exhibit 2. The FDIC undoubtedly knew that the undersigned was the attorney of record for plaintiff (and had been for a year and a half), and not Suslovich & Klein, LLP, since the FDIC entered into a stipulation with the undersigned just a week prior to the Notice that it allegedly sent to Suslovich & Klein, LLP. *See* Exhibit 3.

As demonstrated by *Greater Slidell,* because the FDIC was aware of the proper address and yet did not provide proper notice as required by statute, the notice by publication was irrelevant and infirm. It is clear that the FDIC did not give proper notice to Plaintiff, and thus the time period for Plaintiff to file a claim with the FDIC (even assuming that Plaintiff needed to file a claim with the FDIC even though it already had a pending action) never began to run, and still has not begun to run. Accordingly, Plaintiff never failed to exhaust the administrative process, and thus Defendant's motion must be denied.

### III. FIRREA DOES NOT APPLY TO QUESTIONS OF LIEN PRIORITY

Finally, Defendant's naked argument that FIRREA would apply in our case to a lien priority is wrong and Defendant does not support its contention with any case law. To the contrary, the case law states that FIRREA does not apply to questions of lien priority. *See, e.g.*,

*FDIC v. McFarland*, 243 F.3d 876, 885-87 (5th Cir. 2001) (holding that where the FDIC failed to reinscribe a mortgage under Louisiana law, which would have resulted in its loss of mortgage priority, FIRREA did not apply, notwithstanding the "involuntary lien" to FDIC property); s*ee also FDIC v. diStefano,* 839 F. Supp. 110, 119 (D.R.I. 1993) (defendant's counterclaims were not barred due to failure to submit a claim and exhaust the administrative process, because the bank's filing of a deficiency on a foreclosed mortgage, to which the FDIC was the successor, was a *de facto* denial of defendant's claims, and accordingly the jurisdictional bar of FIRREA did not apply at all.)

Here the case has been pending for four years and Signature, to which the FDIC was successor, has already denied Plaintiff's priority claim in its Answer. Accordingly, the administrative process did not apply to Plaintiff regardless, and thus Defendant's motion must be denied.

## **CONCLUSION**

For all of the reasons demonstrated above, it is respectfully submitted that Defendant's motion must be summarily denied, together with such other, further, and different relief as to this Court may be just and proper.

Dated: Fresh Meadows, New York
April 1, 2024

        /Jonathan E. Neuman/
JONATHAN E. NEUMAN, ESQ.
*Attorney for Plaintiff*
176-25 Union Turnpike, Suite 230
Fresh Meadows, NY 11366
(347) 450-6710
(718) 228-3689 *facsimile*
jnesq@jenesqlaw.com