UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THE FELLOWSHIP FOR ADVANCED
COMPREHENSIVE TALMUDICS, INC.,            Case No. 23-cv-06008-RPK-TAM

                      Plaintiff,

       -against-

EAST 16TH ST. REALTY, LLC,
SIG CRE 2023 VENTURE LLC,
NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE, 10 O.K., L.P., and "JOHN DOE # 1"
through "JOHN DOE # 10,"
The last ten names being fictitious and unknown to
Plaintiff, the person or parties intended being the persons
or parties, if any, having or claiming an interest in or lien
upon the mortgaged property described in the complaint,

                      Defendants.
------------------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW OF
DEFENDANT SIG CRE 2023 VENTURE LLC
<u>IN FURTHER SUPPORT OF ITS MOTION TO DISMISS</u>**


                                                                                                     McLAUGHLIN & STERN, LLP
                                                                                                      1122 Franklin Avenue, Suite 300
                                                                                                       Garden City, New York  11530
                                                                                                        (516) 829-6900

                                                                                                      *Attorneys for SIG CRE 2023 Venture LLC*


Dated: April 12, 2024

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

REPLY ARGUMENT ................................................................................................................2

POINT I:
THE FACT THAT THERE WAS A PENDING CASE IS IRRELEVANT .................................2

POINT II:
PLAINTIFF RECEIVED ADEQUATE NOTICE OF
THE RECEIVERSHIP AND THE BAR DATE ........................................................................6

POINT III:
FIRREA APPLIES TO EXACTLY THE TYPE OF
CLAIMS ASSERTED BY PLAINTIFF HERE ..........................................................................9

TABLE OF AUTHORITIES

Page

Cases

*Bloom v. FDIC*,
 738 F.3d 58 (2d Cir. 2013)...................................................................................................4

*Brady Dev. Co. v. Resolution Trust Corp.*,
 14 F.3d 998 (4th Cir. 1994) ..................................................................................................2

*Bueford v. Resolution Trust Corp.*,
 991 F.2d 481 (8th Cir. 1993) .............................................................................................3, 4

*Cassese v. Wash. Mut., Inc.*,
 711 F. Supp. 2d 261 (E.D.N.Y. 2010) ..................................................................................4

*Dearborn Fed. Sav. Bank v. FDIC*,
 Case No. 13-10833, 2014 WL 320950, 2014 U.S. Dist. LEXIS 10600
 (E.D. Mich. Jan. 29, 2014)....................................................................................................9

*FDIC v. diStefano*,
 839 F. Supp. 110 (D.R.I. 1993)...........................................................................................10

*FDIC v. McFarland*,
 243 F.3d 876 (5th Cir. 2001) ..............................................................................................10

*Huggins v. FDIC*,
 Case No. 07-CV-5313, 2010 WL 3926263, 2010 U.S. Dist. LEXIS 103095
 (E.D.N.Y Sept. 28, 2010)......................................................................................................4

*IndyMac Bank, F.S.B. v. MacPherson,*
 672 F. Supp. 2d 313 (E.D.N.Y. 2009) ...............................................................................3, 5

*Intercontinental Travel Mktg., Inc. v. FDIC,*
 45 F.3d 1278 (9th Cir. 1994) .......................................................................................2, 7, 8

*Marquis v. FDIC,*
 965 F.2d 1148 (1st Cir. 1992)......................................................................................3, 4, 6

*Resolution Trust Corp. v. Elman,*
 949 F.2d 624 (2d Cir. 1991)...............................................................................................3, 4

*Resolution Trust Corp. v. MacKenzie,*
 60 F.3d 972 (2d Cir. 1995)..................................................................................................3, 4

*Resolution Trust Corp. v. Mustang Partners,*
　946 F.2d 103 (10th Cir. 1991) ...............................................................................................3, 4

*Rosa v. Resolution Trust Corp.*,
　938 F.2d 383 (3d Cir. 1991)........................................................................................................8

*Wilson v. FDIC,*
　827 F. Supp. 120 (E.D.N.Y. 1993) ............................................................................................6

<u>Statutes</u>

12 U.S.C. § 1821(d) ................................................................................................3, 5, 6, 7, 8, 9, 10

12 U.S.C. § 1825....................................................................................................................10

Defendant SIG CRE[1] respectfully submits this reply memorandum of law in further support of its motion, seeking dismissal of the Amended Complaint (ECF No. 1-2), as against SIG CRE, because there is no longer subject matter jurisdiction over this dispute.

PRELIMINARY STATEMENT

Because of its failure to exhaust its sole remedy under FIRREA, Plaintiff makes a last-ditch effort to distinguish (unsuccessfully) itself from all other claimants in FDIC receiverships that are required to follow FIRREA's framework to pursue claims. First, Plaintiff urges that because its litigation against Signature was pending at the time of the FDIC appointment as receiver, the FIRREA claims process does not apply. That is not the case. FIRREA specifically refers to pre-receivership actions and requires the exhaustion of the mandatory claims process for those actions to continue. The majority of Circuit Courts that have reviewed this issue agree, as have courts within the Second Circuit (though the Second Circuit has not yet itself opined).

Second, Plaintiff complains about the FDIC's bar date notice. The law is straightforward here and the FDIC complied with its notice requirements under FIRREA. Plaintiff's argument that it never received the actual direct notice comes across somewhat disinguous because, prior to the Claims Bar Date, Plaintiff acknowledged in the June 16 Stipulation (signed by Plaintiff more than a month before the Claims Bar Date) that Signature closed, that the FDIC was appointed its receiver, and the effect of Section 1821(d)(2)(A) with respect to such receivership. Any argument that it did not have notice is without merit.

Lastly, Plaintiff contends that FIRREA does not apply to lien disputes, even where the statute itself states specifically that it covers disputes related to the "determination of rights" with

---

[1] Capitalized terms not defined in this reply memorandum are defined in the Memorandum of Law of SIG CRE 2023 Venture LLC in Support of its Motion to Dismiss, dated March 11, 2024 (the "SIG CRE Memorandum").

respect to the failed bank's assets (such as a mortgage), and that such disputes are subject to the exhaustion requirement. FIRREA also governs disputes relating to any act or omission of the failed bank and Plaintiff alleges here, in seeking priority over Signature's (now SIG CRE's) mortgage, that Signature knew or should have known about a prior mortgage.

Accordingly, FIRREA mandates dismissal of Plaintiff's claims against SIG CRE because Plaintiff failed to invoke or exhaust the mandatory claims process under FIRREA.

REPLY ARGUMENT

POINT I

THE FACT THAT THERE WAS A PENDING CASE IS IRRELEVANT

Plaintiff argues that the pendency of Plaintiff's action commenced in the State Court (which has now been removed to this Court) at the time the FDIC was appointed Signature's receiver negates the effect of FIRREA. Plaintiff is wrong.

In addressing this issue, at least five different Circuit Courts have held that claimants that commenced actions *before* the FDIC was appointed receiver must *still* exhaust the receivership claims process before seeking judicial review of any claim or be subject to dismissal. *See, e.g., Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1006 (4th Cir. 1994) (where plaintiff had a pre-receivership litigation pending and failed to submit notice of its claim, Court dismissed the action for lack of subject matter jurisdiction; "[t]he alleged conflict within the statute, which [the plaintiff] contends relieved it from filing an administrative claim, does not exist . . . there was no excuse for [the plaintiff's] failure to follow the administrative procedure"); *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1282-83 (9th Cir. 1994) (holding that FIRREA's exhaustion requirement applies to pre-receivership litigation; "we see no reason, in [Section]

1821(d) or any other source, why that holding should not apply to cases in which the claimants filed their action before the FDIC was appointed as receiver"); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993) (holding that Section 1821(d)(6)(A) "clearly indicates that FIRREA is to be applied to pending actions"); *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir. 1992) (FIRREA's claims process mandatory for all parties asserting claims, "regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver"); *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991) ("[w]e agree with the district court's determination that a thorough reading of the applicable provisions in FIRREA fails to produce any language which could be construed to support [the] argument that the claim procedures can be dispensed with in cases where suit was filed [pre-receiver]").

While the Second Circuit has not directly addressed the issue, it routinely recognizes the preclusive effect of FIRREA's exhaustion requirement on jurisdiction over claims against a failed bank's assets. *See, e.g., IndyMac Bank, F.S.B. v. MacPherson*, 672 F. Supp. 2d 313, 317 (E.D.N.Y. 2009) ("[w]hile the Second Circuit has not directly addressed this issue, its decision in *Resolution Trust Corp. v. MacKenzie*, 60 F.3d 972, 977 [2d Cir. 1995] supports the Court's conclusion [that pre-receivership claims are subject to the exhaustion requirement]"). The Second Circuit has reinforced the firmness and severity of FIRREA's exhaustion requirement. In *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991), the Second Circuit held:

> We have confirmed recently that the statute means just what it says, and, accordingly, that a claimant must first present its case to the [FDIC] under the administrative procedure erected by FIRREA before seeking relief in the federal courts . . . . Until such time as the claim is disallowed by the [FDIC], 'no court shall have jurisdiction over . . . any action seeking a determination of rights with respect to[] the assets of any depository institution for which the [FDIC] has been appointed receiver.'

*Elman,* 949 F.2d at 627 (quoting 12 U.S.C. § 1821[d][13][D][i]).

Further, in *MacKenzie*, 60 F.3d 972, the Second Circuit reaffirmed the exhaustion requirement, without limitation, and demonstrated the requirement that pre-receivership litigants must comply with FIRREA's claim exhaustion:

> [The FDIC's] authority to realize upon the assets of a failed institution, combined with its duty to protect creditors and depositors of that institution, supersedes, though it does not extinguish, any claim pending against the institution, or in this case, the institution's assets at the time [the FDIC] is appointed [r]eceiver. *While the starkness of such a conclusion is not lost on this court, its validity is well established in both this Circuit and others.*

*MacKenzie*, 60 F.3d at 977 (2d Cir. 1995) (emphasis added). The Second Circuit in *MacKenzie* relied on *Elman,* 949 F.2d at 627 (the earlier Second Circuit case), and *Bueford*, 991 F.2d at 484 (an Eighth Circuit case), and summarizing the *Bueford* holding as follows: "[an] employment discrimination claim pending before district court at time [the FDIC was appointed receiver] becomes suit against [the FDIC] and plaintiff [is] required to exhaust administrative remedies under FIRREA as jurisdictional prerequisite to further pursuing suit in district court").[2]

While the Second Circuit has not addressed the issue specifically, district courts within this Circuit have followed the five-Circuit majority in holding that FIRREA's exhaustion requirement applies to pre-receivership litigation. *See, e.g., Huggins v. FDIC*, Case No. 07-CV-5313, 2010 U.S. Dist. LEXIS 103095, at *10-11 (E.D.N.Y Sept. 28, 2010) ("the Court does not hesitate in joining the majority of courts that have concluded that a federal court cannot pass on the merits of pre-receivership [litigation] claims where the plaintiff has not exhausted his remedies under the FDIC's claims resolution process") (citing *Bueford*, *Marquis*, and *Mustang*); *Cassese v. Wash. Mut., Inc.*, 711 F. Supp. 2d 261, 268 (E.D.N.Y. 2010) ("the Court does not

---

[2] In *Bloom v. FDIC*, 738 F.3d 58, 61, n.1 (2d Cir. 2013), the Second Circuit did not have to answer the specific question, but acknowledged the circuit split and that *five* of the Circuits have held "that the exhaustion requirement does apply to pre-receivership claims."

deviate from its previous decision, and holds that the Court has no jurisdiction to hear causes of action against the FDIC as receiver unless the plaintiffs have exhausted their administrative remedies first – regardless of whether a relevant cause of action was asserted before . . . receivership"); *MacPherson*, 672 F. Supp. 2d at 317 ("FIRREA does not contain an exception that applies to [the pre-receivership counterclaims] in [the] case").

The majority view here is consistent with a fair reading of the statute, which specifically refers to "continu[ing] an action commenced before the appointment of the receiver." 12 U.S.C. § 1821(d)(6)(A).[3] In short, where a party *does* file a claim, the FDIC has 180 days to determine whether to allow or disallow the claim (*see* 12 U.S.C. § 1821[d][5][A]) and if the FDIC disallows a claim (*or* the 180-day period expires without FDIC action), the claimant has 60 days to do one of the following: seek an administrative review of the claim, file suit on the such claim, *or continue any pre-receivership litigation* (*see* 12 U.S.C. § 1821[d][6][a]). There is little doubt that the exhaustion requirement was meant to apply to pre-receiver actions when, in enacting the statute, Congress expressly stated that a claimant can, after having its claim denied, *continue an action commenced before the appointment of the receiver*.

---

[3] Section 1821(d)(6)(A) reads as follows:

> Before the end of the 60-day period beginning on the earlier of –
>
> (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the [FDIC] is receiver [*i.e.*, the 180-day period after a claim is filed with the FDIC by which the FDIC shall determine whether to allow or disallow]; or
>
> (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i) [*i.e.*, the date that the FDIC denies the claim during the 180-day period],
>
> the claimant may request administrative review of the claim . . . or file suit on such claim (*or continue an action commenced before the appointment of the receiver*) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A) (emphasis added).

Plaintiff spends most of its opposition[4] attacking *Marquis* (a First Circuit case, which Plaintiff conflates) and its analysis but ignores the other four Circuits and the case law within this Circuit that similarly hold that pre-receivership litigation is subject to the exhaustion requirement. (Opposition Br., pp. 1-4.) Plaintiff then cites to decisions from courts in the minority and relies on only a single case from within the Second Circuit (*see Wilson v. FDIC*, 827 F. Supp. 120 [E.D.N.Y. 1993]), which is simply distinguished as a case involving an elderly *pro se* plaintiff, where the receiver's counsel sent inadequate and confusing letters (*i.e.,* the court referred to the letter as "thoroughly misleading" and stated that "[a] recipient of such a letter could well conclude that there was no point in filing a claim . . . and that therefore he should not bother"), in what the court found to be a misled *pro se* plaintiff based on his lack of knowledge and sophistication. This is a far cry from the case here, where Plaintiff (a) is a sophisticated party, (b) is a lender foreclosing a mortgage, (c) has been continuously represented by counsel in the foreclosure action, and (d) had its counsel sign a stipulation acknowledging the Signature receivership more than a month before the Claims Bar Date.[5]

POINT II

PLAINTIFF RECEIVED ADEQUATE NOTICE
OF THE RECEIVERSHIP AND THE BAR DATE

Plaintiff argues that the FDIC's notice was inadequate. Plaintiff's argument is disingenuous – Plaintiff had every opportunity to file a timely claim when it acknowledged, by

---

[4] Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss, dated April 1, 2024 (the "Opposition Br.").

[5] Plaintiff also argues that the FDIC did not seek a stay here. The Plaintiff ignores the fact that the Claims Bar Date had run as of the time this action was removed to this Court (*i.e.,* the Claims Bar Date was July 17, 2023, and the removal was August 9, 2023, shortly after the State Court so-ordered the June 16 Stipulation on July 27, 2023; ECF No. 1-3), so there was no need for a stay since Plaintiff failed to file a claim in the receivership. Moreover, FIRREA is clear on its face – the stay in section 1821(d)(12)(A) is an option (*i.e.,* the receiver "may" request a stay). Plaintiff also takes issue with the fact that the FDIC transferred this mortgage to SIG CRE (in which the FDIC still owns an 80% interest). (Opposition Br., pp. 8-9.) This issue is addressed in Point I(C) of the SIG CRE Memorandum.

stipulation (more than a month *before* the Claims Bar Date), the FDIC's role as receiver and the effect of Section 1821(d). (*See* June 16 Stipulation; ECF No. 1-3.) More specifically, on June 16, 2023, Plaintiff signed a stipulation in this action in which it agreed that (a) Signature was closed, (b) the FDIC was appointed as Signature's receiver, and (c) "as a result of that appointment and pursuant to 12 U.S.C. § 1821(d)(2)(A), the [FDIC] succeeded by operation of law to 'all rights, titles, powers, and privileges' of Signature." (*See* June 16 Stipulation; ECF No. 1-3.) The June 16 Stipulation negates any claim made by Plaintiff of its lack of notice of the receivership and the effect of FIRREA.

In its opposition, Plaintiff – ignoring FDIC's vast publication of the notice (*see* Grieser Decl., ¶ 5; Ex. B) and its own knowledge of the receivership, which are sufficient notice to comply with the statute (*see, e.g., Intercontinental Travel*, 45 F.3d at 1285) – focuses on the separate delivery of notice to Plaintiff's prior counsel. However, that additional direct notice also complied with FIRREA as sent to the attorney for Plaintiff that commenced this action and signed the complaint (*see* ECF No. 1-5).[6]

FIRREA's requirements for notice are also less stringent than Plaintiff's implies. FIRREA requires only that the FDIC publish notice regarding the receivership and claims bar date more than 90 days before the deadline (which it did; Grieser Decl., Ex. B). *See* 12 U.S.C. § 1821(d)(3)(B)(i). The FDIC is also to mail a similar notice to creditors appearing on the books of the failed institution. *See* 12 U.S.C. § 1821(d)(3)(C)(i). If the FDIC subsequently discovers the name and address of a claimant not appearing on the institution's books, the FDIC is to mail a similar notice to the discovered claimant. *See* 12 U.S.C. § 1821(d)(3)(C)(ii). Here, as set forth in the Grieser Decl., *after* publishing, and then learning that Plaintiff had commenced this action,

---

[6] Since 2019, Plaintiff has had *four* separate attorneys in this foreclosure action. (See ECF No. 1-5.)

Mr. Grieser "checked the claims database for the Signature Receivership and confirmed that no administrative claim had been filed by, or on behalf of, [Plaintiff]," and FDIC staff, on April 12, 2023, sent notice to Plaintiff directly at the address it had for Plaintiff (*i.e.,* the address for Plaintiff's counsel that commenced this action).

The Ninth Circuit analyzed a similar issue in *Intercontinental Travel,* 45 F.3d at 1285, where the FDIC published notice of the bar date, but did not mail notice at all to the claimant (whereas here, notice *was* mailed to Plaintiff's attorney) under Section 1821(d)(3)(C). The court held that, "[w]hile the FDIC concedes that it failed to mail notice to [the claimant], the record indicates its failure was merely negligent [and] [s]uch negligence does not justify preventing the FDIC from further action." *Id.* at 1285 ("[t]his conclusion is even more compelling because FIRREA's exhaustion scheme serves an important purpose – allowing the FDIC 'to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation'") (quoting *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 396 [3d Cir. 1991]).[7]

The bottom line is the FDIC fulfilled its publication and notice requirements and Plaintiff indeed *knew* about the receivership – it signed the June 16 Stipulation acknowledging the FDIC's appointment and the effect of FIRREA – and Plaintiff is a sophisticated party, with counsel, and a lender prosecuting a commercial foreclosure action. Plaintiff did not file a claim by the Claims Bar Date deadline (or at any time since; Grieser Decl., ¶ 7), this this action should be dismissed because of Plaintiff's failure to file a claim.

---

[7] The *Intercontinental Travel* court noted that there was "nothing in the record suggesting that the FDIC engaged in affirmative misconduct by failing to mail notice to [the claimant] or that it intentionally disregarded the mail notice requirement" and the court found that "the FDIC's negligence in this case is not enough to excuse [the claimant] from failing to exhaust its administrative remedies under FIRREA." *See id.* at 1285.

POINT III

FIRREA APPLIES TO EXACTLY THE TYPE OF
CLAIMS ASSERTED BY PLAINTIFF HERE

FIRREA's mandatory claims procedure applies to Plaintiff's claims here. In fact, FIRREA's specific language covers these claims. First, FIRREA applies to any claim seeking payment from, *or a determination of rights with respect to*, the assets of a failed bank for which the FDIC has been appointed receiver. *See* 12 U.S.C. § 1821(d)(13)(D)(i). Here, Plaintiff, in its mortgage foreclosure action, seeks a declaration that Signature's recorded mortgage (which is now SIG CRE's mortgage) is subordinate to Plaintiff's purported mortgage. (ECF No. 1-2, ¶¶ 21-22, 26, 29.) This fits squarely within Section 1821(d)(13)(D)(i) as a claim for the determination of rights with respect to an asset of Signature (here, Signature's mortgage).

Second, Plaintiff's claim against Signature relates to its allegation that when Signature was granted its mortgage, it "had or should have had actual, constructive, and/or inquiry notice" of Plaintiff's mortgage. (ECF No. 1-2, ¶¶ 23, 29.) In other words, Plaintiff seeks to subordinate SIG CRE's mortgage because of Signature's conduct. Under Section 1821(d)(13)(D)(ii), this claim is covered as it applies to a claim *relating to any act or omission of the failed bank.*

Courts that have addressed lien priority disputes and the exhaustion requirement have held that such disputes are covered by FIRREA and must be exhausted through the claims process. *See, e.g., Dearborn Fed. Sav. Bank v. FDIC*, Case No. 13-10833, 2014 U.S. Dist. LEXIS 10600, at *13 (E.D. Mich. Jan. 29, 2014) ("[p]laintiff failed to follow the administrative process in the early stages of this case, and that failure forever bars [p]laintiff from pursuing its mortgage priority claim"; court granted the FDIC's motion to dismiss for lack of jurisdiction).

Because it cannot reasonably argue that Section 1821(d) and the exhaustion requirement do not apply here, Plaintiff cites two inapposite cases, one of which has nothing to do with FIRREA's claim exhaustion requirement, and the other actually supports the broad reading of Section 1821(d)(13)(D). The first case, *FDIC v. McFarland*, 243 F.3d 876, 885 (5th Cir. 2001), involved the FDIC's failure to reinscribe a mortgage within a statutory period under Louisiana law and the court found that the FDIC was bound to that state law. There, the FDIC was the movant, attempting to avoid the effect of the state law. Plaintiff cites this case because the FDIC argued 12 U.S.C. § 1825(b)(2) (a separate provision of FIRREA that protects the FDIC from certain acts by third parties). The court there held that Section 1825(b)(2) does not apply because it only "prohibits state and local entities from taking advantage of the FDIC's failure to reinscribe by attaching liens and other instruments to satisfy tax judgments." *Id.* at 886. The case has nothing to do with FIRREA's claims process and whether Section 1821(d) applies.

The second case, *FDIC v. diStefano*, 839 F. Supp. 110, 119 (D.R.I. 1993), supports SIG CRE's arguments and show the breadth of Sections 1821(d). There, the court concluded that counterclaims against the FDIC (in an action commenced by the FDIC) were claims seeking a determination of rights and relating to acts or omissions under Section 1821(d)(13)(D). Apparently, Plaintiff relies on this case regarding the exhaustion requirement not being necessary, not because the claim does not fit within the Section 1821(d) framework. But there the action was commenced *by the FDIC* and counterclaims were asserted by the defendant and deemed denied. *See id.* at 119. This case is inapposite. Here, Plaintiff commenced the action against Signature, seeking a determination as to Signature's rights, based on Signatures conduct and knowledge. That fits squarely within Section 1821(d)(13)(D).

Dated: Garden City, New York
April 12, 2024

                              McLAUGHLIN & STERN, LLP

                              By:    /s/ Brian J. Grieco
                                       Brian J. Grieco
                                       Todd H. Hesekiel
                            1122 Franklin Avenue, Suite 300
                            Garden City, New York  11530
                              (516) 829-6900

                            *Attorneys for SIG CRE 2023 Venture LLC*